This case is Case No. 4-16-0741, Marcmiller v. Champaign-Urbana Mass Transit District, and for the appellant we have Mr. Swofford, and for the appellee, Mr. Hagel. And will you be the only one arguing, Mr. Hagel? Okay, thank you. You may proceed, counsel. May it please the court, I'm Steve Swofford on behalf of the Champaign-Urbana Mass Transit District. This case arises out of a bus-pedestrian collision that occurred in Champaign in February 2015. The bus driver was making a right-hand turn, and he obviously didn't see the pedestrian, the plaintiff here, who sustained grievous injuries. There's no question about that. And the plaintiff was struck by the side of this bus, right around the front door, somewhere near the front door when she was 15 to 19 feet in the intersection. And based on these facts, the trial court entered a partial summary judgment in favor of the plaintiff on the issue of negligence only against the bus company, but ruled that the issue of the plaintiff's comparative fault had to be tried. After that ruling, the defendant kind of rethought how it wanted to try the case, and it decided that it would admit all liability issues, because the issue of comparative was still open, and just try the case on damages. The plaintiff then tendered an instruction 1.02, this was before the pretrial instruction, and it all came up again post-trial, I mean at the end of evidence, and tendered IPI 1.02, which says the court has found the defendant is liable, so that is not an issue you will need to decide. And the defendant subjected to that instruction, because it goes really beyond what the court had found on summary judgment, because the court had not found the defendant liable on all issues, because it had found it only negligent, all right? Liability also encompasses the question of comparative fault, and that's why the defendants objected, and that's why they tendered an alternative instruction, which stated, I have it here somewhere, it's in the 1.03, 1.03B, which stated the defendant has admitted its negligence, and it admitted proximate cause, and admitted that its negligence was the proximate cause. And the defendant admitted that it was the proximate cause of damages to the plaintiffs, and there are other issues the court would need to decide, which was a more accurate instruction of what the case involved. Opposing counsel mentions the fact that you wanted to have the court say you admitted negligence after the court had already found you negligent, so was the alternative instruction accurate? Was it accurate? Well, it wasn't. Well, we had admitted negligence, and it was an open question. We could have appealed the summary judgment, and we could have appealed the summary judgment because usually negligence is not – it's really a pretty rare case in which a court directs negligence. So, I mean, we could have appealed it, and we did admit it, and our instruction was certainly more accurate than their instruction, in which the court had effectively directed all liability issues out of the case, and taken the plaintiff's side on all liability issues. And whenever a court favors – gives an instruction like this, favoring one party over another, it does have an influence on the jury, and that's why we so strenuously objected, and that's one reason why we're pursuing this on appeal, because of the effect that it had on the jury, potentially had on the jury. Because, you know, there's – it's pretty, pretty striking how – you know, I don't want to be a meanie about this, because this woman has grievous injuries, and she deserves to recover something, but she did walk into the side of a bus. I mean, this is kind of inexplicable that she is – that there was comparative – I'm just telling you that there was comparative negligence involved in this case, so we didn't make a serious concession here. It wasn't a minor concession that we made here. But it was made. It was made. So we – That's all I'm saying. So, you know, so it is not – it's not like we didn't make – it's not like we made no concession at all. That's my only point here. Okay, so – And as far as this instruction goes. Okay, so you're basically arguing that you didn't get the benefit of making that concession. That's correct. Okay. And that this instruction – this instruction really overstated what happened here, and that it was an incorrect statement of what had occurred, and that it was potentially, if not on its face, prejudicial, given the facts of this case. Because it implied to the – well, it more than implied to the jury that there was, you know, that there was no legal issue here as to whether or not her recovery could have been diminished because of what happened here. Well, counsel, I'm – And of course I – I don't quite – I'm sorry, I didn't mean to interrupt. I don't quite understand, okay, the judge did find that the mass transit district was liable, then you all admitted liability, and then you withdrew your request for contributory damages. And so I'm not quite understanding where it would have been appropriate for the judge to bring those issues back in the case. I'm not – Would it have been more accurate – I'm not sure what you mean by the judge to bring the issues back in the case. With this instruction, for instance, do you think that it would have been more appropriate for the court to say something along the lines of the court found mass transit district liable, then mass transit admitted liability? Well, it should have. I suppose it would have been more accurate for the court to say that the court found that the – that the mass transit district was negligent and that – I mean, you could get down – I mean, you could burrow down and then go into the – and take it issue by issue. And the district has chosen not to – there's no instruction for this, pattern instruction, to challenge, to put the plaintiff's comparative negligence at fault or to challenge proximate cause. I mean, I don't know. I mean, we have a – liability, though, encompasses more than negligence. It encompasses proximate cause and it encompasses the issues such as has the comparative fault and this instruction was incorrect. And, you know, the issue – there is an issue here, I understand, as to whether we tendered the best alternative instruction we could have tendered, but it was more accurate in statement of the law based on the facts of this case than their instruction was. That's my position, okay? Moving on to the other instruction. And the other instruction is actually – it's really – it's an issue that really was not – it was addressed in one other case in the first district and it's only been addressed once. And it was given no real attention in that case whatsoever because it was – it's the issue of whether pain and suffering is – encompasses emotional distress. And really, there's no question that it does based on this line of cases that I've cited in my brief. And this Babikian case, which was authority for the giving of the instruction in this case, didn't go back, didn't even decide that issue. It decided the issue of – the argument in that case was – the issue in that case was can you recover emotional distress in a medical negligence case? And, of course, you can. I mean, that's pain. You can do that. I mean, that's – and these old cases that we've cited that talk about what suffering is in pain and suffering have recognized that you can recover from mental anguish going back to, what, the early 20th century. I mean, this is – in a personal injury case, you could always recover from emotional distress in the form of what was known as mental anguish. And so the issue we're presenting here has never been cited. And it's basically this. How many times can you put – can you – I mean, what happens when you did what we're doing – what happens when you divide this up here is you're putting emotional distress on the – on itemizing it twice on the verdict form. I mean, how many times can you itemize it? And when you itemize it twice, you're going to get increased recoveries. You're going to get duplicative recoveries. How much? I don't know how much. You never know how much. I know how – however, here we have 1.5 million for one and a million for another. I can't remember which is which. But when – and I quoted the colloquy in my brief, but when you go back, when we objected, when the defense objected to this duplicative items on the verdict form and in the instructions, the back and forth between the court and plaintiff's counsel, they recognized that if they didn't put – if the court wasn't – if the jury wasn't able to put the items on the verdict form, they wouldn't be able to put them on the verdict form. If there wasn't instruction on the – instructed on the item of emotional distress, then the plaintiff's counsel could still argue that the plaintiff suffered emotional distress as part of suffering. And of course, that was our point, that it's the same thing. And so what – all you're doing is you're saying twice on the verdict form, twice on the instructions, that the plaintiff can recover from emotional distress. And that issue was never decided in the Vickian, and we're presenting it here, and we're saying it's improper to put it, in fact, on the jury form, on the verdict form twice for the jury to be instructed twice for the same item of damages. And it drives up unnecessarily the amount of damages. And, you know, it's an $8.7 or $8 million verdict in total, and I guess, you know, what's another million, huh? I have a couple questions. I have a couple questions, counsel. First of all, with respect to the jury instruction that you're talking about, do you agree that you have to be able to point to or show some evidence supporting that there was a double recovery? It's not enough just to say, well, there was pain and suffering on there, and then also emotional distress. Don't you have to point to something in the record that would demonstrate that there was a double recovery? Do you agree with that? Well, when I point to the verdict form, I mean, I'm not sure that it, I'm not, I don't know how, I don't know what else I can point to, but. And that's my next question. When we look at the verdict, the jury awarded her $1.5 for emotional distress, but only $1 million for pain and suffering. So doesn't that suggest that there was not a double recovery? Well, I guess we'll never know for sure, will we? But we're talking about $2.5 million here total, and it just seems to me like we're talking about a lot of money here, and we should be having the jury, when we're talking about this much money, properly instructed in the first place. Now, refresh my recollection, because I most definitely could be wrong. In front of the trial court, didn't you agree that you had to follow, the court had to follow Babikian? Well, we didn't agree that it had to follow Babikian. No, we were making our... I thought there was some comment about until the 4th district ruled, then you had to follow it. Geez, no. I don't know the exact phrasing. We certainly recognized the binding authority of Babikian. We did not consent that it was proper law. Gee, I'm sorry, but I can't... No, I think we're saying the same thing. Okay, I mean, we didn't waive the point, I don't believe. No, I agree. Okay, yeah, okay. I'll agree with your honor. Okay. I mean, it's, sure, I think that all trial courts, the law in Illinois seems to be not always followed, that all trial courts, if there's only one appellate court decision to follow, all trial courts are supposed to follow. Whatever district, it doesn't matter what district you rule in that respect. Anyway, I think that the one instruction on 102B was, 102 was misleading because it did not really accurately reflect what happened, and since it was the court giving the instruction, it was prejudicial. Since it was the court favoring one party, so much one way that it was prejudicial, and I think the other instruction was just not the law, and it shouldn't be given, and it's an incorrect statement of the law, and it shouldn't be perpetuated, and it was prejudicial because of the amounts of money involved, and it was an abuse of discretion to give both of these instructions for those reasons. Those instructions that are misleading or incorrect statements of the law should not be given, and I ask that the judgment be reversed for these reasons, and since these positions are clearly, regardless of how the court rules, there's a lot of substance to these positions, and therefore, there is this pending motion for sanctions. I just think as no matter whatsoever, it should be denied. Thank you, counsel. You'll have time on rebuttal if you so desire. Mr. Hagel. Thank you. May it please the court? Counsel. My name is James Hagel, and I represent Ken and Patricia Marksmiller in this matter. Your Honor, the defendant has made two separate challenges to the trial court's exercise of discretion when instructing the jury. Both of these must fail. This jury in this case was fairly, fully, and comprehensively informed of the relevant law and issues. When you are reviewing jury instructions that are actually given to the jury, you must only reverse if they're misleading or actual prejudice has been shown. Both components are not met in this case. Defendant wants a new trial. Defendant received a fair trial in this case. The instructions were part of that fair trial. Let's look at both those issues separately. The first issue addresses 1.02, which the plaintiff gave an instruction 2A and number 5, and defendant's only instruction they ever tendered, defendant's instruction number 1, which was tendered pre-trial, at the commencement of the trial. Only to plaintiffs is accurate. You must remember, for 17 months, the defendant vigorously contested liability in this case. They hired two, if you read the record, they hired two experts. The evidence was they paid one expert over $300,000. This Dr. John Meyer, who came up with the animation, and it conclusively showed the liability of the defendant. The court, after full hearing on July 29, 2016, didn't make a summary determination of negligence, which is part of what you can do when a hearing like that occurs. But rather, the docket entry clearly states, as well as the court's own language, the court allows the plaintiff's motion for summary judgment and finds the defendant liable. What does that mean? That's basic tort law. Breach of duty, approximately causing damages, means liability. The court did reserve for the jury the issue of comparative negligence. Again, basic tort law. What is comparative negligence? It's a damage reducer. If you're doing a trial and you lose that liability, even though they raise an affirmative defense of affirmative negligence, guess what? You don't get to speak to that. Game's over. There is no such thing as partial liability. What is partial liability? I've been trying cases for over 30 years. I've never heard that term. What happened in this case, the defendant was found liable, and the court was going to allow the jury to decide if the damages should be reduced under comparative negligence principles. But we never got there. Why? Because defendant's attorneys, and I think was a very big tactical mistake, they decided, oh, wait, the court's found us liable? Well, no, we're going to say we're liable now. It was a nullity. It didn't matter at that point. And we made the argument in our brief, and we made that to court. It's like in a criminal trial. Defendant goes to trial. Jury finds him guilty. Guess what? Defendant said, oh, I'm guilty. I admit it now. And wants to use that as sentencing, right? Reduce the punishment. What did the defendant do in this case? They decided to admit negligence by filing that amended answer when that was not an admission of liability. What was it? It was a concession that the court was right. It was a waiver of any challenge they could make in this court about the granting of the summary judgment on liability. And secondly, it removed the affirmative defense. They didn't have to file that amended answer. They could have simply made a motion to withdraw the affirmative defense and proceed to trial, preserving the issue on summary judgment and arguing the affirmative defense. But they decided not to do so. And why? We heard it today. They wanted that advantage. They wanted to be placed in a favorable light with the jury so they could argue inappropriately. And there was a motion in limine on this, but we're so sorry for what happened. We've admitted fault. They weren't given that opportunity, so their strategic decision of their trial attorneys failed. And now they're trying to say, oh, well, wait, that's the history of this case. That isn't what occurred. The court found liability. And Supreme Court Rule 239 requires the trial court to use the IPI, which is exactly what we did. 1.02, the court found the defendant liable. You've got to tell the jury when you're hearing evidence from over 20 witnesses, don't worry about liability. It's been decided. You just need to determine the damages to be afforded to the Marks-Millers. Defendant's instruction, this 1.03b, is not in any way accurate. And there's no case law to support it. We've heard it again. We heard nothing from counsel about some case that some appellate court or the Illinois Supreme Court has ever said, you should give 1.03b or something fashioned like that if the court finds liability. Even going further, what's the prejudice? The jury was appropriately told they're only to decide damages. We submitted that as part of the issue instruction number five as well. And the jury assessed damages. There is no proof in the record that because of this instruction, 1.02, that somehow the jury inflated damages. And we cited the McHale case, which went through that same very analysis where there was an itemization, if you remember, for the next of kin. They said, well, the amount, how can we say it's inflated? There was no abuse of discretion clearly by Judge Jones when he gave 1.02. In the jury verdict, there's no proof in the record that it was somehow affected because of that instruction. So let's move on. Second issue involves the giving of 30.05.01, which is the emotional distress instruction, which was plaintiff's number eight incorporated into the verdict form plaintiff's number 17. We didn't hear one question, we didn't hear one comment from attorney for the appellant about waiver. This court can decide that case simply by application of Supreme Court Rule 366 in the Autheim case, the Illinois Supreme Court case. No remedial instruction was ever tendered by the MTD attorney at trial showing what they believed the correct damage instruction would be, an alternative to plaintiff's number five, nor to the verdict form, which was plaintiff's number 17. For the first time in this case, in the brief, I saw a comment, well, we just asked the court to strike that. It was just that easy. I guess use a sharpie, mark it out. Well, first of all, they never even suggested what they wanted. They just objected to the inclusion of emotional distress. We have no idea now, as we sit here, what they were proposing, so the court could look at the two and determine which one needed to be given to the jury. That is clear waiver. There's no excuse for that. I don't know why they didn't do it, and if you remember the scenario, how this occurred, they had a whole night to think about it. We spent our night putting together a brief, which they didn't put together, distracting us from preparation from closing argument, so we could give the court the citation after their attorney stood up and read the incorrect comments to 30.05.01 in court, which were outdated and had been revised in May of 2016. That's what they presented to the court, but they didn't take the time to do what any good trial lawyer does and is required to do to preserve the record for you, submit the alternative. They never did a clear waiver. However, in the alternative, if we consider, or assuming you consider their argument, there was an appropriate exercise of discretion by Judge Jones in giving the plaintiff's instruction number 8 and the verdict form 17, and plaintiff's number 17. Again, Supreme Court Rule 239 requires that the IPI instruction given of it accurately states the law and is applicable to the facts, and if you look at 30.05.01 in the comments, the Babikin case is the one that needs to be followed, and you give it. It's interesting in this case, and we've heard it here, the defendant appellant is not saying you can't get emotional distress when there's physical injury. In a posit to the argument advanced by the lawyer when he was reading the wrong comments to the IPI to the judge. But then on day two, when we came back the next morning, oh, I looked at the law, guess what, they're right. You can have it with physical injury. Babikin is controlling. They specifically consider every argument advanced by the defendant. You get it when there's physical injury. It's a separate element of damage. They're not saying you can't get compensation for it, and they're not saying it didn't occur in this case. If you look at this record, if there's ever a case in the history of personal injury cases where emotional distress damages should be awarded, it's this case. You have the testimony of Dr. Avis Bernstein, a board-certified clinical psychologist. She rendered her opinions that this was an emotional injury with emotional consequences, which was permanent. We have all the family members' records replete with the references about Pat Marsteller's life has been changed, how she has emotional distress. She lost who she was. She lost her independence. She can't do anything without planning. This was a permanent emotional injury separate and apart from the devastating physical injuries with the loss of both her limbs that she suffered. The defendant has suggested no authority that suggests that in any way Babikin is wrong. There is not a double recovery in this case. As Justice White pointed out, there's nothing in the record that would support that. But rather, what's in the record supports it was a well-thought-out decision. Different amounts were given. Emotional distress, $1.5 million, and $1 million for the pain and suffering, the pain she suffered in the physical therapy, the pain she suffered every day putting on her prosthetics, but the emotional consequences, the emotional distress she suffers every second of every day of her life. It would be pure speculation to say somehow there was a double recovery. And the defendant's trial attorneys, again, had another mechanism which they could have utilized but chose not to or forgot to. I don't know which. A special interrogatory. Could have been utilized and was specifically addressed in the Babikin case that said, there was no special interrogatory. How do we know what the jury was thinking? But we could have had that built into the record. It wasn't done. And there's absolutely no showing of prejudice. Rather, what we have is an instance when a jury went through each and every element, never asked a question, never asked anything of the court for direction, is emotional distress within the suffering? Of course. There's physical pain. There was so much evidence about physical pain and physical injury. And there was so much evidence separate and apart from that about the emotional injury and the emotional distress. Again, no abuse of discretion by Judge Jones in giving plaintiff's instruction number eight and the verdict form 17. And I honestly believe it was waived. It's so simple as a trial lawyer to make your record. I mean, you have to do it, for example, with motions in limine. That was addressed in the Babikin case as well. You know, you lose the motion in limine. You're like, now the woman asked the question in court. You know, I want to object and highlight that. Well, you know, if you don't, guess what? You waive it. They waived it. Now, there was just a short moment the counsel addressed and blew off flippantly the Rule 375 motion. You must take that seriously. You have the Penn case, which this district entered when they did grant 375 sanctions. Look at it. There's two things to look at. One, under Rule 375, is it a frivolous appeal? The answer I'm going to tell you in a second is obviously yes. And second, or they only have to have both components. I think we do in this case. Was there an improper purpose? Yes. I've already addressed why it's frivolous when I address both issues. No case law. The facts all support what was done. No contrary authority to any way support the position's advance. And no proof of prejudice. It's an objective standard you must apply. It doesn't matter that Mr. Swafford or his law firm, that they thought, well, you know what, subjectively we think it's got a shot and it's a good appeal. What would a reasonable attorney do? And I suggest to you, Your Honors, that any reasonable attorney faced with these two issues when considering this verdict for the seriously injured person and her injured husband would say there's no merit to that appeal. Just pay the judgment. Move on. There's no reason to appeal. But I think if we look at the second component, that you can consider a 375 motion improper purpose. And one of the definitions in the Supreme Court rule is an improper purpose is if it's to delay. I don't think it was the other part to harass, malintent. It was to delay. And it's delay enforcement of the judgment. And we do have some proof in the record why I think that's true. If you look at the record, there was a partial satisfaction of judgment by the first insurance company. And that's all record. This isn't me speaking out of turn. It's in the stipulation filed, I believe it's October 31, 2016. Safety National had the first two layers of insurance. They tendered their policy limits of $5 million plus interest that was accrued through that date. There's two other insurance companies involved. One is called Star Indemnity, and one's called Catlin. Now, in the stipulation, it doesn't tell anything further about this, so I won't speak to what the precise roles of those companies are. But what's important to note is that there was a partial satisfaction, which you would say, well, Mr. Hagel, isn't it true to stop the clock on interest? The defendant can pay the judgment, and if they win, they get the money back. True, but not in this case. Why? If you read that stipulation, it was specifically stated by that insurance company that plans could retain the money, even in the event of a reversal. So what does this tell us about delay? It tells us that someone else, whether it's Star, Catlin, or the defendant itself, want to delay paying the money that is owed so they have the benefit of the use of that money. You can use your common sense. I mean, they got to pay 6% interest, but one could also look at what the market did or what investments are doing in the past 14 months. They've had the use of $4.87 million. So I think this motion for sentences isn't something that should be glossed over. This is serious. These people's lives have been significantly interfered with on February 25, 2015. A jury rendered a verdict in their favor, awarding significant damages to them. The one insurance company paid what they owed, but for some reason the others persist in delaying the Marks Millers getting what is due to them so they can move on with their lives. So, Your Honors, for the reasons I've discussed and have set forth on brief, I do ask you to please affirm the ruling below, and I also ask you to award sanctions and grant us leave to file an affidavit as to what we claim is due under Supreme Court Rule 275 in the event you do award and find sanctions appropriate, as I believe you should. Thank you very much. Thank you, Counsel. Any rebuttal? Very briefly, just to address a few things Mr. Hagel said. I really challenge that you can equate liability with negligence, as he did. And I can just give an easy example of that. If this case had gone to trial with the comparative negligence issue and Patricia Marks Miller had been found more than 50% comparatively at fault, my client wouldn't have been liable. Unlikely, perhaps, but we're just talking about the definition of liability. His argument about waiver is almost inexplicable to me with regard to Plaintiff's Instruction Number 5. It is very clear in the record at pages 156 and 157 of Volume 39 of the Report of Proceedings that Mr. Hansel was objecting solely to the inclusion of emotional distress in addition to pain and suffering on that instruction. And for him to tender an instruction that said exactly the same thing as Instruction 5 without that one line would have been a pure formality. And Mr. Hagel, in his brief, one of his own cases, McHale, which he made a big deal about in another issue, says the party's failure to tender a paper copy of a proposed instruction or verdict form is not a forfeiture if the record shows that the trial court would not have submitted the instruction or verdict form even if it had been provided with a copy. And that is exactly the situation we have here. So, according to his own case that he cited, this wasn't a waiver because the record is clear. The proper objection was made. The trial court knew exactly what was going on and would have taken Instruction 5 instead of the instruction that we wanted, which was the same instruction but without the line item for emotional distress. And we have never argued that he could not recover from emotional distress. It's quite clear from the record and the colloquy that I quote in my brief that everybody in that conference and instruction agreed that if emotional distress was not on Plaintiff's Instruction 5, that the Marks-Millers could recover from emotional distress as a part of pain and suffering. And that is undisputed and so that argument goes absolutely nowhere. What else? I don't know how – I don't think it's possible to submit a special – I don't have researched this in this case, but I don't think it's possible to submit a special interrogatory on an issue that does not determine issue of liability. So, I don't think that argument being made goes anywhere. And that all being said, I've restricted myself solely to rebuttal. Unless the Court has any questions. I don't see any. And Counsel, I neglected when we first started to explain the absence of our third panel member. Justice D'Armond is the third panel member here today and he is unable to be with us, but he has received all the materials and he will be listening to oral argument as it is recorded and we will be conferencing with him regarding the cases. So, he will be the third panel member. At this time, we will take this matter under advisement and be in recess. Thank you.